## Richmond

DOROTHY M. MEADOR v. GEORGE B. LAWSON, III, ET AL.

April 22, 1974.

Record No. 730470.

Present, All the Justices.

*B. K. Cruey* (*Arthur E. Smith; Bates, Cruey & Lee*, on brief), for plaintiff in error.

*Daniel S. Brown* (*Carroll D. Rea; Hazlegrove, Carr, Dickinson, Smith & Rea*, on brief), for defendants in error.

POFF, J., delivered the opinion of the court.

Dorothy M. Meador filed a motion for judgment against George B. Lawson, III and his employer, Culligan Softwater Service of Roanoke, Inc., seeking damages for personal injuries sustained in an automobile collision. At the conclusion of plaintiff's evidence, the trial court sustained defendants' motions to strike and entered summary judgments for defendants.

The accident occurred about 9:40 a.m. on November 4, 1970 during a snowfall which had accumulated some deposit on the roads. Meador, a rural mail carrier, was driving a yellow stationwagon east on State Route 856 approaching a dead end intersection with State Route 601. Heading south towards the intersection, Route 601 is downgrade with a gradual curve to the left which is sloped down from west to east. Meador stopped at the intersection. As she turned south onto Route 601, her car slid down the slope across the road and came to rest facing south on the eastern shoulder of Route 601. Meador testified that she did not strike the guardrail. Unable to extricate her car from the mud, Meador shifted the automatic transmission to "park", turned on the warning flashers, opened the door, placed her left leg outside, and prepared to get out. At that moment, her car, struck from behind, was knocked forward and her leg was pinned in the door.

Lawson, called as an adverse witness, testified that he was driving a van or truck south at 25 m.p.h. in the southbound lane of Route 601, a road he had travelled "many times"; that approximately 125 feet from Meador's car, which was "against the guardrail", he "saw the lady in distress" with her foot sticking out the door and applied his brakes; that the truck "slid over sideways" to the left shoulder of the road and "sort of veered off the guardrail into the back of her car"; and that the impact knocked her car forward "about a foot."

The investigating officer testified that Route 601 is a blacktopped road divided into two lanes at the scene of the accident by double solid lines which at the time were obscured by snow; that under normal conditions Lawson's sight distance approaching the position of the Meador car was 250 feet; that he estimated damage to the Meador car at $300.00; and that he could not determine from the physical evidence how far the Meador car had moved after the Lawson impact.

Mrs. Meador's husband testified that the day following the accident he visited the scene and observed "yellow paint down the guardrail for a distance of about 14 feet" and that "by looking at the positions of the rear wheels and the length of the car, the car had to move approximately another 6 feet before that yellow line started on the guardrail"; that he took several color photographs of the car and scene of the accident but none of the paint on the guardrail; and that he did not know if the wrecker dragged the car along the guardrail.

■ The question at issue is whether the trial court erred in sustaining defendants' motion to strike plaintiff's evidence and entering summary judgment for defendants.

"When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when 'it is conclusively apparent that plaintiff has proven no cause of action against defendant', *Leath* v. *Richmond, F. & P. R.R.*, 162 Va. 705, 710, 174 S.E. 678, 680 (1934), or when 'it plainly appears that the trial court would be compelled to set aside any verdict found for the plaintiff as being without evidence to support it.' *Green* v. *Smith*, 153 Va. 675, 679, 151 S.E. 282, 283 (1930). This is so because when a judgment based on a granted motion is reversed on appeal, a new trial must be conducted; when a plaintiff's verdict follows a denied motion, whether the verdict is set aside or confirmed by judgment below, this court may enter final judgment, thereby obviating the delay and expense of a new trial." *Williams* v. *Vaughan*, 214 Va. 307, 309, 199 S.E.2d 515, 517 (1973).

"We have repeatedly said that in ruling on a motion to strike plaintiff's evidence all inferences which may be fairly drawn from the evidence must be considered most favorably to the plaintiff, and where there are several inferences which may be drawn, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless the inferences be strained, forced or contrary to reason. [citations omitted]." *Williams* v. *Chesapeake Bay Bridge & Tunnel District*, 208 Va. 714, 717, 160 S.E.2d 573, 575-76 (1968).

"In this Commonwealth, we follow the salutary rule that questions of negligence and contributory negligence should, if at all appropriate, be left to the determination of the jury. This is because such questions, ordinarily, can only be determined by the sifting and appraisal of facts—matters which are exclusively within the province of the jury. [citations omitted].

"The trial court is empowered to step in and decide such questions, as matters of law, in a proper situation, thereby withdrawing from the jury any consideration thereof. But this course should be followed by the court only when reasonable men should not differ as to the conclusion to be reached from the facts and where one, and

only one, conclusion, as a matter of law, is warranted. [citations omitted]." *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S.E.2d 18, 21-22 (1962).

"Summary judgment shall not be entered if any material fact is genuinely in dispute." Rule 3:18.

■ With these principles in mind, we are of opinion that whether Lawson was guilty of culpable negligence was a question of fact rather than a question of law.

Arguably, neither vehicle would have skidded and the collision would not have occurred had weather and driving conditions been normal. As both drivers were aware, conditions were not normal and had not been normal for some time. But abnormal conditions do not always negate culpability; when abnormal conditions are known and the heightened hazards they create are reasonably foreseeable, the standard of ordinary care the law imposes is higher.

> "Where nature has created hazardous conditions on a highway, and such hazardous conditions are open and obvious, the operator of a motor vehicle is required to take care in the operation of his vehicle proportionate to the known dangerous conditions of the highway." *Fisher* v. *Gordon*, 210 Va. 523, 526-27, 171 S.E.2d 835, 838 (1970).

The trial court felt that whether Meador was guilty of contributory negligence under the abnormal conditions obtaining was "probably a jury question". Just so, we believe that whether Lawson was guilty of primary negligence was properly a jury question.

> "Whether the driver of a car has exercised the proper care under the given circumstances and whether the skidding of his car has resulted from his negligence are usually jury questions. [citations omitted]." *Whitley* v. *Patterson*, 204 Va. 36, 39, 129 S.E.2d 19, 21 (1963).

Here a jury might reasonably conclude that the abnormal conditions dictated a higher standard of care and a speed lower than 25 m.p.h. A jury might also reasonably conclude that during the snowfall which had already covered the road, Lawson's application of brakes on the downgrade, sloping curve, with which he was familiar, was not care "proportionate to the known dangerous condition of the highway",

particularly after he had observed that another vehicle had skidded out of control at the same dangerous place.

The evidence stricken by the trial court raised other questions of fact about which reasonable men might differ. If 25 m.p.h. was a reasonable speed under the circumstances, was Lawson's speed greater than that, and if so, did it constitute negligence causally related to the accident? The jury might have felt that the extent of damage to Meador's car indicated such a higher speed. With further reference to speed, what distance did Meador's car move after Lawson struck it? That question raises other questions. If Meador's car left a yellow paint mark on the guardrail 14 feet long, how much was caused by the Lawson impact? Did Meador's car strike the guardrail before the Lawson impact and leave part of the paint mark? Was part left by the Meador car when it was towed by the wrecker? Or was the entire length left by the Meador car after the Lawson impact? These were questions of fact, genuinely in doubt and material to the issue of primary negligence. In answering them, the jury could have determined that the Lawson impact moved the Meador car a total of 20 feet, as Meador's husband testified, rather than one foot, as Lawson testified; that such an impact was evidence that Lawson's speed was greater than he said; and that such speed was a breach of the standard of care dictated by the abnormal conditions and constituted negligence causally related to the accident.

We find it unnecessary to consider other issues raised by Meador's assignment of error. The judgment is reversed and the case is remanded for a new trial.

*Reversed and remanded.*