## First Virginia Bank-Colonial

v.

## As'ad M. Masri, a/k/a A. M. Masri, m.d.

Record No. 920760

April 16, 1993

Present: All the Justices

*Kenneth C. Grigg (A. James Kauffman; Taylor, Hazen & Kauffman,* on brief), for appellant.

No brief or argument for appellee As'ad M. Masri, a/k/a A. M. Masri, M.D.

JUSTICE KEENAN delivered the opinion of the Court.

The dispositive issue in this appeal is whether the evidence is sufficient to support the jury's finding that First Virginia Bank-Colonial (FVBC) breached its contract with Dr. As'ad M. Masri.

This action arose from a written contract providing for an overseas wire transfer of funds from FVBC to Amro Bank (Amro), in Amsterdam, Holland. In February 1988, Masri and his wife obtained a loan of $150,000 from FVBC. On February 16, 1988 Masri signed a wire transfer request for FVBC to transfer the borrowed funds to Amro at its Scheldenplein branch, for deposit to the account of Lenex Corporation (Lenex).

The wire transfer request contains a statement that "the undersigned hereby agrees to conditions on reverse side hereof." The reverse side provides in material part:

> The transfer will be effected by us subject to the following terms and conditions and we assume no obligation or undertaking except those expressly set forth herein. We shall send at your risk a message to our correspondent, requesting that payment be made to the Beneficiary in the currency of the place of payment and make funds or credits available therefor.
>
> . . . We shall not be responsible for non-performance or loss or damage by reason of or resulting from: errors, delays, omissions or defaults in transmission or receipt of any communication; errors, delays, omissions or defaults of our correspondents, their agents or sub-agents; . . . or for any cause beyond our control, all of which risks are assumed by you. . . . No refund shall be made by us, if because of erroneous identification, payment has been made to one other than the Beneficiary.

FVBC was unable to transfer the money directly to the bank in Holland because it did not have the required "correspondent relationship" with Amro. Therefore, FVBC sent the funds through an intermediary bank, Bank of Nova Scotia, and transmitted disbursal instructions directly, by telex, to Amro.

In deposition testimony presented to the jury, Edwin Okel, an official of Amro, confirmed that Amro received the funds on February 18, 1988. The disbursal instructions arrived at the Scheldenplein branch the following day and the funds were placed in Lenex's account. No funds were drawn out of that account until February 22, 1988, when the money was disbursed, apparently, to a person or persons other than intended by Masri.

On January 25, 1989, Masri and his wife signed a renewal note for $150,000 with FVBC. The Masris later defaulted on the note, and FVBC filed a motion for judgment requesting full payment of the principal and interest. Masri filed a counterclaim, alleging, among other things, that FVBC had breached its contract with him.

FVBC obtained summary judgment on the note against the Masris. After trial on the counterclaim, the jury returned a verdict for Masri on the breach of contract count. The trial court entered judgment for Masri in the amount of $184,582 and denied FVBC's motion to set aside the verdict.

On appeal, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to Masri, the party prevailing in the trial court. *Medlar v. Mohan*, 242 Va. 162, 164, 409 S.E.2d 123, 124 (1991). FVBC contends that the evidence was insufficient to support the jury verdict, since FVBC complied with the terms of the agreement and Masri agreed to assume the risks detailed therein. We agree with FVBC.

The evidence showed that Masri signed the wire transfer request. Immediately above his signature on that document, specific language alerted him that the conditions on the reverse side of the document were also part of the agreement. While Masri testified that he did not read the language on the reverse side of the wire transfer agreement, he is nevertheless bound by that language. In the absence of fraud, duress, or mutual mistake, an individual having the capacity to understand a written document, who signs that document without reading it, is bound by his signature. *First Nat'l Exch. Bank v. Johnson*, 233 Va. 254, 259, 355 S.E.2d 326, 330 (1987); *Metro Realty of Tidewater, Inc. v. Woolard*, 223 Va. 92, 99, 286 S.E.2d 197, 200 (1982). Here, the record shows that Masri is a

physician and a psychiatrist. There is no evidence that he lacked the capacity to understand the agreement that he signed.

Under the terms of the agreement, Lenex was the beneficiary of the transaction. The uncontroverted evidence showed that the transferred funds actually reached Lenex's account. The disposition of those funds after they reached Lenex's account is not germane to this inquiry. FVBC had agreed only to transfer the funds to the Scheldenplein branch of Amro Bank, "requesting that payment be made to the beneficiary." Moreover, under the contract, Masri had waived any claim against FVBC for nonperformance due to causes beyond FVBC's control. Plainly, the disbursement of the funds after they had reached Lenex's account was a factor beyond FVBC's control. Thus, the evidence is insufficient to establish that FVBC breached its contract with Masri.

For these reasons, we will reverse that portion of the judgment of the trial court which awarded Masri $184,582 on his counterclaim and will enter final judgment for FVBC on the counterclaim.

*Reversed and final judgment.*